� Good morning. My name is John Cody, and it's my honor and privilege to be here before you today to represent the interest of Pete Dermer, who is with me and seated at the petitioner�s table. I'm not going to go into the facts and the background of the case that I believe has adequately been put forward in the briefs. To get right to what we see as the core issue and the main issue here today is whether Pete Dermer was wrongfully terminated from his position at the FAA. Mr. Dermer contends that he was wrongfully terminated. The agency and the merit system judge put forward the proposition that Mr. Dermer was in what is known as an up-or-out program, where you are hired, you go through a training program. If you don't complete that training program satisfactorily, then you're shown the door. Mr. Dermer contends that he was not in an up-or-out training program. As you know from the briefs, he was a former PATCO air controller and was part of the firing back in the early 80s. He was rehired and brought back into the FAA as a controller at his former position. 20 years later? Yes. And so now we have to decide when he's brought in at the developmental level whether he needs to advance in terms of an up-or-out policy. And isn't that a factual question? Would you agree that whether or not the policy is an up-or-out policy is a factual question? Well, yes. So don't we have to give substantial – we can only go worse if it's unsupported by substantial evidence according to our standard of review, right? So what would you say about the evidence that the AJA in this case relied upon, that the policy talks about contingent on satisfactory progression to full performance levels, that the FAA's training policy goes through details, things like that? Why would you say that's not substantial evidence? We don't get to decide on our own, unfortunately. Well, what I'd like to point out in response to that is Mr. Dermer is an FPL. He is a full performance level controller. Did he pass? Well, he is a full performance level controller, but he did need additional training because he had been away from the scope for so long. You know, air traffic is not the kind of thing that I think probably – I think you want them to get their updated training really frequently, right? You don't want them to come in – I mean, 20 years ago, I imagine the technology must have changed substantially in that time. I mean, otherwise Mr. Dermer would have walked in and been able to do the training like this, right?  He would be the first one to tell you that he needed training and that he was having trouble with some of the issues that related just to what you said. The technology was very different. What Mr. Dermer is saying is that by the very definition that the FAA uses, and I pointed that out in the appendix in FAA Personnel Manual 300-330-1 on page 34, the very definition of a developmental is an air traffic controller who has not achieved FPL status at the assigned facility. Help me with the facts here. Yes, sir. Computer technology must be able to keep track of and separate airplanes in the air. What actually is the task of the modern air traffic controller, and what is the training that was required here? Well, there's different types of facilities. There's in-route facilities for planes that are at altitude and going between their destinations. Mr. Dermer worked at what's called a terminal facility where the airplanes take off and land, and they control a certain level of airspace, not all the way up to the top and not on the ground, which is controlled by the tower. I'm trying to figure out what the skill is that's required of Mr. Dermer with modern computers that must do the bulk of this work. Well, they have to maintain separation in time and distance. And the computer must send signals that handle the majority of that. Are you being more specific as to exactly what the controller is doing? I'm sure that as a backup, they would have to be able to do it manually. If there was a catastrophic failure of the radar scopes or of the electronics, they have to have a skill to be able to fall back on so that we know that those airplanes are not going to run into each other or occupy the same space at the same time in the event of a computer error. Counsel, are you saying that Mr. Dermer was not a developmental air traffic controller? Or are you objecting to his classification in that regard? Developmentals are ones that have to go through the up or out program. But the training manual says a developmental air traffic controller is any controller not fully certified at the facility to which he is assigned. Doesn't that describe Mr. Dermer? He was not fully certified.  The rest of the definition at the bottom of that page says that if you are an FPL, which Mr. Dermer was, if you're an FPL, that the only way you can become a developmental is if you go to a higher rated facility. Mr. Dermer was an FPL at the New York TRACON, which was the highest rated facility in the country. His position is that as a rehired- This was in the 80s. Yes, sir. But there's no distinction in the regulation. He could have been an FPL 15 years ago. He could have been an FPL 15 days ago. That makes no distinction. You don't think his severance from the agency would be a distinction that's relevant here because it says an employee who achieved an FPL and then is reassigned or promoted to a higher level of facility. It sort of talks about continuity of service, sort of. It doesn't say that explicitly, but one might interpret it that way. Do you think his severance might cause him to be treated as a developmental even though he was once upon a time an FPL? Well, he was treated a little bit different because he did have some of those skills. He was not an off-the-street hire who doesn't have a clue about airspace and separation. He has those skills. Did they meet home again? Yes, they did. The distinction as far as to the upper-out training program that we think is important here is if he wasn't developmental and he didn't meet the requirements, then he should have been shown the door. But because he was a prior FPL, he should have been assigned to a lower-rated facility than the Nantucket radar facility. And there are various ratings of facilities all dependent on the amount of traffic that flows in and out of them. So it's his contention that he should not have been let go. He should have been sent to a lower-rated facility where he could handle the traffic flow. Why isn't it fair, though, for the agency to just say, okay, well, we don't necessarily need you at a lower-rated facility. We need you here, and if you can't pass the training program, then you can't stay on board. Why isn't that our opinion to do? Because it's their regulations that say that they're supposed to send him to a lower-rated facility. As a developmental, they can show him the door. As a FPL and a former certified controller, they were under an obligation to try to find him a lower-rated facility to work at. One of the other things that Mr. Germer contends is that he did not receive adequate training. And I went into a great deal of detail in the brief, but there's one part of that that I think is very important and I'd like to point out is it's the time period between March of 2004 and his last skills check that he failed on June 25, 2004. A fully certified, up-to-speed controller has to spend 16 hours a month in front of the scope, actually working and handling traffic. If that person does not, if he or she does not get that 16 hours a month, he has to have training. So in other words, somebody who is fully certified and doing this every day is too rusty if they haven't done it for 16 hours in the previous month. Between March of 2004 and June 25, 2004, Mr. Germer had three hours of creditable OJT on the scope and then he was given a skills check on it. He was set up to fail on that test. And not only that, but it was in the Nantucket Radar's busiest day of the year. I do have some time remaining, but I'm going to leave it for rebuttal. Good morning. May it please the Court. It appears, I don't recall in the briefs where Mr. Germer ever argued he was FPL. I didn't either, so I was hoping you would get right to that. I don't recall that. However, if he worked at— Let's presume he was 20 years ago. He may have been, Your Honor. How does that affect, which he did argue, that he deserved whatever status he had 12 years earlier? Well, if you take a look at the training plan that's in the appendix— Are you at A34? Where are you? No, no. A34 is the— Well, first of all, let's take a look at A34. It talks about what a developmental air traffic controller is. And it says an air traffic controller in any option— By the way, options are like, from what I understand, you have an option at the terminal, you have an option at the TRACON. There are several types of options. And by the way, if you look over at what happens with different options, there's also that in the letter. Who has not achieved full performance level for the facility for which assigned. And then they go on to say that he has. Well, past training, and he has to achieve full performance level. Now, he's never contended that I recall that he was at full FPL, full performance level, for this facility. There's never been a mention where his previous facility was. I think it was this facility, wasn't it? He just said the New York—he was at the New York TRACON. I believe he said New York. He said New York. If it was New York, which was the busiest, or conceivably one of the busiest air corridors, and 20 years ago, how does that affect this gate? I think that he was fired 20 years ago. He has had no training since, and he came back— He wasn't fired because of any deficiencies. No, he was fired when President Reagan fired him. It was correct. No, I'm not saying— It was a labor dispute. That's right. I'm not saying he was fired for any sort of discrepancy. By the way, this removal is a nondisciplinary removal. It's not for any sort of— I see, at least in the appellant's brief, back in 1968, it says he was promoted and transferred to Nantucket Tower, Massachusetts, in May 1968, now that he was transferred to New York, but he had served there. Yeah, that is correct. As a matter of fact, it's my understanding he requested to come back to Nantucket. However, if you take a look at page 842, which is the training plan that was put in by Mr. Dermer, and this is an amendment, 11-2803, the first word there says developmental, Pete Dermer. What if he was FPL in Nantucket 20 years ago, which there's at least something in the record to suggest that. How does that affect this case? I think it doesn't affect it in any way, other than when he came back on, the FAA did not consider him FPL. He was developmental. He was considered developmental. And it was the FAA that made that decision, not Mr. Dermer. You know, Mr. Dermer saying he's FPL just says he's not getting enough training. And you get training—I'm sure you get standard training all the time to keep your proficiency up. But the reason he was not FPL when he came back to this facility, and under the FAA policy, you have to be FPL. If you're not, according to the FAA policy, he was up and out. He was a developmental air traffic controller. And as a developmental air traffic controller, he had to pass training. And by his own admission, Mr. Potty just argued, he didn't pass the skills test. That could happen, I suppose, with somebody who was FPL, nonetheless, in a particular skills test if it's administered for some reason that might not pass. They'd still be FPL, right? They could be, sure. But I think his argument—and let me see if I understand the difference between his argument and your position here. He is saying, as I understand it, and this is based on the top of A34, that the first sentence does not apply to him—the first sentence there about an ATS who has not achieved a full performance level for the facility— does not apply to him because at one time he was FPL for that facility, and that based on the second sentence, or the third sentence, I guess it is, once you are FPL for a facility, then the first sentence never applies to you again. Your position, if I understand it, is the agency is entitled to say, no, you may have historically been FPL for this facility, but you're not now based on their assessment of the need for further training. Is that a fair characterization? I believe so, Your Honor. That is—by the way, an important thing to keep in mind here, this wasn't the first time Mr. Dermer failed his training. This was the second time. By his own admission, he came back sometime, I think, in 2002 or early 2003. He claimed he had a hostile work environment, that the newer air traffic controllers did not like him because he was a reinstated air traffic controller. So, Mr. McDonald, who was the manager of the facility at the time—this is in the facts— decided to change his schedule, and then in June, I think, of 2000— I want to make sure I get this correct—2003, allowed— there was a little trick. If you recall in the briefs, in the evidence, there was a review board, his first review board, he didn't pass. So they allowed him a second time to go through training, and it was the second training he failed that they decided that he was out, that he didn't achieve FPL. And this is not a case that is a paper case like we see a lot of times in MSPB cases. We had a hearing in this case. The witnesses, including Mr. Dermer, came forward. They all testified about his performance. The judge made credibility determinations. He claimed he didn't get enough training. He said he was set up for failure. Well, the judge disagreed. He was thrown in on the toughest day of the year after having only three hours on the scope. You heard those. Yes, I heard that. If you take a look at my appendix where we put in the initial decision in pages 10 through 12, the administrative judge went through in detail what training Mr. Dermer received and that his claim that he was set up for failure— I don't believe it's in the briefs. This is something that was argued. But if you look, she goes through on page 11 of our appendix. She lists every date and what his training was and the amount of hours. And then what she says is she has the testimony of his instructor. And by the way, they didn't seem to consider what had gone on on the first failure. They were strictly looking at what happened for the second period of time. And in such detail, it was really very helpful when you look at her decision. This is the amount of hours. And what she said was Mr. Dermer came in and he testified and he said, I didn't get enough training. Maybe he testified I was set up for failure. She said the record—her term was the record belies what he was testifying to. And that the testimony of the manager, Mr. McDonald, Mr. Beasley, and the instructor, Mr. Lori, all were supported by documentation. As Judge Moore pointed out, there is substantial evidence here that Mr. Dermer was a developmental air traffic controller, that he was in an up-and-out program, that he failed it, and that they even considered trying to find another job for him and came to the conclusion that the skills that he was lacking— I think the term was he had reached a plateau— that those skills were so lacking that they couldn't find another position for an air traffic controller. So the evidence is substantial. And as we pointed out in our brief, if there's a rational basis for the judge's decision, the judicial function is concluded. And we ask the court to affirm the judge's decision in this case. You referred us, I think, earlier in talking about the question of whether he was treated or properly treated as a developmental as opposed to an FDL at the time he returned. You referred us to, I think, an agency document. A training plan. A training plan. Where was that again? Page 41. I believe it was in the brief of the— Blue Appendix. His appendix, I think it was page 842 or 841 if I'm not wrong. 842. 842. And the word right there says he's developmental. Right. Now, is there anything else, either in the testimony or in the materials that we have access to, that would provide additional support for the conclusion that he was, in fact, developmental and that the decision was made, which the agency was free to make, to decide whether he was developmental or not? We didn't put any of the testimony. The judge considered all the testimony and came to the conclusion based upon what the FAA supervisors were testifying to, that he was developmental and in an up-and-out program. It would appear he—and then I would just take the fact that he had not been an air traffic controller. He may have been a reinstated air traffic controller, but he hadn't been an air traffic controller for 20 years. Yeah. And that in and of itself, as Judge Rader pointed out, we assume that there have been substantial changes in the program or the way air traffic controllers do their job. But if I may add something, what I do understand is the human element is still the major element. Even though we have computers, it is still the skills, if anyone has seen, I guess, a movie like United 93, you see what air traffic controllers do. They are in constant contact and they are constantly— it's a very stress-related job. And that's why, as you probably know from other cases, they're allowed to retire early. And what I'm saying is that the human element, Your Honor, is the primary element in the air traffic control system. Mr. Dermer, however good he had been 20 years previously, wasn't able to make—I'm sorry for him that he couldn't make the break. Let me see. To pursue this FPL versus developmental issue one step further, is it the agency's position that when somebody comes back in a situation such as Mr. Dermer's, that the agency is free, notwithstanding a prior certification FPL, to make an independent determination as to whether to treat that individual as developmental? I believe so, Your Honor. Is there evidence to that effect? Do you recall any of the materials? I can't recall, other than the witnesses who were all experienced FAA individuals testify that he was developmental and should be. That's what the judge—the judge based her decision on the testimony of the individuals that came before her. She made credibility determinations. So, again, I would ask that the court affirm this decision in this case, and thank you very much. Thank you. Mr. Cody? You have five minutes remaining. Very briefly. What's the FPL? When he came back. What's the FPL when he came back? It's our contention that he was. That you don't lose— It's the record that shows that he was. But you don't lose an FPL status. You just become non-current or not certified. Mr. Jacobson pointed this to a document where he was listed as developmental. Yes, on page A21. In rebuttal to that, I'd like to point out that there were two witnesses at the hearing, two FAA controllers who worked in the hierarchy of Mr. Germer, Mr. Beasley and Mr. Jukowicz, who were both— Their testimony is in the appendix. They both testified that he was not a developmental, that he was a rehire, and that he was not subject to the same up-and-out training program. Also, on page A21 of the appendix, the rehire, or the agreement that brought Mr. Germer back into the FAA, states that he's to be brought back as a CP-8. That is not a developmental level. That is the level that he left in 1982. It just says ATC-8. Am I missing something? I'm looking at page A21, and it says, To accept a position as an Air Traffic Control Specialist at Cape Grapevine Level 8, ATC-8. Well, the regulations state that an ATC, if I'm understanding it right, says developmental. An ATC in any option would not achieve the full performance level for the facility which assigned. So just saying he's an ATC doesn't mean he's not a developmental. That's true. I just want to make sure I'm understanding it. Sure. If you use the first part of that definition that we had used before on page A-34, there is a possibility that somebody could be at a Level 8 and then be a developmental if they move to a higher level facility. But that was not the case with him. In summary then, Mr. Germer is requesting that the case be remanded to the board with instructions that he be reinstated and or reassigned to a lower-grade facility, if required. And that's all I have. If you all have any questions. Thank you, Mr. Cody. The next case is Coruscant v. United States.